IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

REGINALD BALDWIN,
    Petitioner,

v.

WARDEN R. MARTINEZ, et al.,
    Respondents.

Civil Action No. 3:13-cv-0005

(Judge Mariani)

FILED
SCRANTON
JUN 2 0 2014

PER _____
    DEPUTY CLERK

## MEMORANDUM

On January 17, 2012, Reginald Baldwin, an inmate confined in the Allenwood United States Penitentiary, White Deer, Pennsylvania ("USP-Allenwood"), filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the Eastern District of Pennsylvania. (Doc. 1). The case was transferred to the Middle District of Pennsylvania on January 2, 2013. (Docs. 6, 7). Baldwin challenges the Bureau of Prisons' ("BOP") authority to set payment schedules through its Inmate Financial Responsibility Program ("IFRP").[1] Respondents filed a response to the habeas petition on March 11, 2013. (Doc. 10). No traverse has been filed. The petition is ripe for disposition, and for the reasons outlined below, will be denied.

I.     **BACKGROUND**

On July 10, 2008, a grand jury in the Eastern District of Pennsylvania returned an Indictment charging Baldwin with one count of conspiracy to interfere with interstate

---

[1] The IFRP provides a means to ensure that inmates meet their court ordered financial obligations. Upon arrival at their designated institution, inmates receive instruction on how the IFRP works and what the sanctions are for those inmates who refuse to participate. See 28 C.F.R. § 545.10, et seq.

commerce by robbery, in violation of 18 U.S.C. §§ 1951(a), (b)(1), and (b)(3); one count of interference with interstate commerce by robbery, and aiding and abetting, in violation of 18 U.S.C. §§ 1951(a), (b)(1), and § 2; and, carrying and using a firearm during a crime of violence, and aiding and abetting, in violation of 18 U.S.C. § 924(c) and § 2. (Doc. 10-1, Ex. B; *United States v. Baldwin*, No. 08-cr-401-1 (E.D. Pa.) at (Doc. 4)). The charges related to the armed robbery of a jewelry store on or about February 14, 2007 in Philadelphia, Pennsylvania. (*Id.*). On April 23, 2009, a jury convicted Baldwin on all counts of the Indictment. (*United States v. Baldwin*, No. 08-cr-401-1 (E.D. Pa.) at (Doc. 54)). He was sentenced to two hundred and twelve (212) months imprisonment, followed by five (5) years supervised release, and directed to pay a special assessment of $300.00, due immediately, and to make restitution in the amount of $274,000.00. (Doc. 10-1, Ex. B). The Judgment specified:

> $300.00 Special Assessment Due Immediately.
> $274,00[0] restitution is due immediately. It is recommended that the Defendant participate in the Bureau of Prisons Inmate Financial Responsibility Program [IFRP, 28 C.F.R. § 545.10,] and provide a minimum payment of $25.00 per quarter towards restitution. In the event the entire restitution of [sic] not paid prior to the commencement of supervision, the Defendant shall satisfy the amount due in monthly installments of not less than $100.00 to commence 30 days after release from confinement.

(Doc. 10-1, Ex. B).

Baldwin entered USP-Allenwood on January 4, 2010. (Doc. 10-1, Ex. 1, Declaration

of Krista Klett ¶ 24, Attach. C). In January of 2010[2], Baldwin signed an "Inmate Financial Plan," and voluntarily agreed to participate in the IFRP by making quarterly payments in the amount of $25.00 towards his court-ordered financial obligations. (*Id.* at Attach. D). The plan also provided that Baldwin was to begin making payments in March 2010. (*Id.*). Respondents contend that Baldwin did not make his March 2010 payment. (Doc. 10, p. 4; Doc. 10-1, Ex. 1, Declaration of Krista Klett ¶ 26).

Baldwin was released from USP-Allenwood on May 3, 2010 on a state writ. (Doc. 10-1, Ex. 1, Declaration of Krista Klett ¶ 27; Doc. 10-1, Attach. C). He returned to USP-Allenwood on May 21, 2010. (Doc. 10-1, Ex. 1, Declaration of Krista Klett ¶ 28). Respondents state that Baldwin failed to make a payment in June 2010. (Doc. 10, p. 4; Doc. 10-1, Ex. 1, Declaration of Krista Klett ¶ 29).

A second "Inmate Financial Plan" was executed by Baldwin on July 20, 2010 and he again voluntarily agreed to participate in the IFRP by making quarterly payments in the amount of $25.00 towards his court-ordered obligations. (Doc. 10-1, Ex. 1, Declaration of Krista Klett ¶ 30; Doc. 10-1, Attach. E). According to this plan, the first payment was to be made in September 2010. (*Id.*). Baldwin presumably failed to make a payment in September 2010 as he was released from USP-Allenwood on August 16, 2010 via a federal writ. (Doc. 10-1, Ex. 1, Declaration of Krista Klett ¶ 31; Doc. 10-1, Attach. C). He returned

---

[2] It is noted that Baldwin's signature on this document is dated 01/20/2020 and the staff witness signature is dated 01/13/2010. (Doc. 10-1, Attach. D).

to the facility on April 11, 2011. (Doc. 10-1, Ex. 1, Declaration of Krista Klett ¶ 32).

On May 8, 2011, Baldwin executed a third "Inmate Financial Plan," wherein he voluntarily agreed to participate in the IFRP by making quarterly payments in the amount of $25.00 towards his court-ordered financial obligations. (*Id.* at ¶ 33; Doc. 10-1, Ex. F). Under this plan, the first payment was to be made in June 2011. (*Id.*). Respondents state that Baldwin again failed to make a payment in June 2011. (Doc. 10, p. 5; Doc. 10-1, Ex. 1, Declaration of Krista Klett ¶ 34).

On September 13, 2011, Baldwin made a $25.00 payment towards his felony assessment. (Doc. 10-1, Ex. 1, Declaration of Krista Klett ¶ 35; Doc. 10-1, Attach. G).

Baldwin missed his next payment and, on December 13, 2011, the BOP placed him in an "FRP Refuse" status. (Doc. 10-1, Ex. 1, Declaration of Krista Klett ¶ 36; Doc. 10-1, Attach. H). Respondents state that BOP officials advised Baldwin of the effects of being in "FRP Refuse" status. (Doc. 10, p. 5; Doc. 10-1, Ex. 1, Declaration of Krista Klett ¶ 36).

After filing the instant habeas petition, Baldwin entered into a fourth "Inmate Financial Plan" on April 26, 2012. (Doc. 10-1, Ex. 1, Declaration of Krista Klett ¶ 37; Doc. 10-1, Attach. I). Under this plan, payments were to begin in June 2012, and Baldwin voluntarily agreed to make quarterly payments in the amount of $25.00 towards his court-ordered obligations. (*Id.*). Since executing this fourth plan, Baldwin made two (2) quarterly payments of $25.00 in September 2012 and December 2012. (Doc. 10-1, Ex. 1,

Declaration of Krista Klett ¶ 38; Doc. 10-1, Attach. G). At that time, the outstanding balance of his felony assessment was $225.00. (*Id.*). Baldwin has not made any payments towards his restitution. (Doc. 10-1, Ex. 1, Declaration of Krista Klett ¶ 39; Doc. 10-1, Attach. G).

On September 7, 2012, Baldwin's status was changed from "FRP-Refuse" to "Participates." (Doc. 10-1, Ex. 1, Declaration of Krista Klett ¶ 40; Doc. 10-1, Attach. J).

In the present petition, Baldwin "requests this Honorable Court to instruct the Federal Bureau of Prisons to stop the collection of funds for payment on court ordered fine. To stop the sanctions against petitioner and not to retaliate against petitioner for taking legal action against the B.O.P." (Doc. 1, p. 4). Respondents argue that the petition should be dismissed because Baldwin failed to exhaust his administrative remedies. (Doc. 10, pp. 8-10). Alternatively, Respondents argue that Baldwin's claim is meritless and the petition should be denied because the sentencing court appropriately set Baldwin's repayment schedule, and the BOP appropriately collected his payments. (*Id.* at pp. 10-13).

II.   **DISCUSSION**

   A.   **Exhaustion**

Despite the absence of a statutory exhaustion requirement attached to 28 U.S.C. § 2241, the courts have consistently required a petitioner to exhaust administrative remedies prior to bringing habeas claims under § 2241. See *Marti v. Nash*, 227 Fed. Appx. 148, 150 (3d Cir. 2007); *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000). In order for a federal

prisoner to exhaust administrative remedies, he must comply with 28 C.F.R. § 542, *et seq.* See *Lindsay v. Williamson*, 2007 U.S. Dist. LEXIS 54310, 54315-16 (M.D. Pa. 2007) (Caldwell, J.). "Exhaustion of administrative remedies is required 'for three reasons: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.'" *Id.* at 54316, *citing Moscato v. Federal Bureau of Prisons*, 98 F.3d 757, 761-62 (3d Cir. 1996). Exhaustion may be excused upon an affirmative showing of futility. See *Gambino v. Morris*, 134 F.3d 156, 171 (3d Cir. 1998); *Warwick v. Miner*, 2007 U.S. Dist. LEXIS 27590, 27594-97 (M.D. Pa. 2007) (Conner, J.).

The BOP's Administrative Remedy Program is a three-tier process available to inmates who "seek formal review of an issue relating to any aspect of his/her confinement." 28 C.F.R. § 542.10(a). An inmate must generally attempt to informally resolve the issue by presenting it to staff in a BP-8 form. See 28 C.F.R. § 542.13. If the issue is not informally resolved, then the inmate may submit a request for administrative remedy (BP-9) to the Warden. See 28 C.F.R. § 542.14. An inmate who is dissatisfied with the Warden's response may appeal to the Regional Director (BP-10), and an inmate dissatisfied with the Regional Director's decision may appeal to the General Counsel in the Central Office (BP-11). See 28 C.F.R. § 542.15(a). Appeal to the General Counsel is the final

administrative step. *Id.*

Respondents argue that Baldwin failed to exhaust his administrative remedies. (Doc. 10, pp. 8-10). In his petition, Baldwin indicates that he filed an informal grievance concerning the issues raised in the instant habeas petition, and also filed a formal grievance and appealed to the Warden and the Regional Director. (Doc. 1, p. 3). He states that he further appealed to the General Counsel in the Central Office, but received no response. (Doc. 1, p. 3).

According to the BOP SENTRY Report of March 7, 2013 submitted by Respondents, Baldwin filed seven (7) administrative remedies since his incarceration. (Doc. 10-1, Ex. 1, Declaration of Krista Klett ¶¶ 9, 11; Doc. 10-1, Attach. A). Only two (2) of these remedies appear to relate to Baldwin's current petition.[3] (Doc. 10-1, Ex. 1, Declaration of Krista Klett ¶¶ 11-13; Doc. 10-1, Attach. A). On August 8, 2011, Baldwin filed Administrative Remedy No. 650972-F1 requesting that the BOP change his status from "I.F.R.P. Refuse" to "I.F.R.P. Exempt." (Doc. 1, p. 8; Doc. 10-1, Ex. 1, Declaration of Krista Klett ¶ 14; Doc. 10-1, Attach. A). This Remedy was denied at the institution level on August 12, 2011. (Doc. 10-1, Ex. 1, Declaration of Krista Klett ¶ 15; Doc. 10-1, Attach. A). On October 19, 2011, Baldwin appealed this denial to the BOP Northeast Regional Office, designated as

---

[3] In the other Administrative Remedies, Baldwin requested a ladder and wheelchair, he complained that his bed in the Special Housing Unit ("SHU") was too high, and he claimed that he was harassed by staff. (Doc. 10-1, Attach. A).

Administrative Remedy No. 650972-R1. (Doc. 1, p. 6; Doc. 10-1, Ex. 1, Declaration of Krista Klett ¶ 16; Doc. 10-1, Attach. A). However, the BOP Northeast Regional Office rejected the appeal as untimely on October 21, 2011. (Doc. 1, p. 6; Doc. 10-1, Ex. 1, Declaration of Krista Klett ¶¶ 16, 17; Doc. 10-1, Attach. A). Baldwin was advised that his appeal was due within twenty (20) days of the Warden's response. (Doc. 1, p. 6). The Northeast Regional Office informed Baldwin that he must provide staff verification for being untimely and that he could resubmit his appeal in the proper form within ten (10) days of the rejection notice. (*Id.*). Respondents state that there is no record that Baldwin resubmitted his administrative remedy or appealed the rejection to the BOP Central Office. (Doc. 10, p. 8; Doc. 10-1, Ex. 1, Declaration of Krista Klett ¶ 19). Baldwin contends that he did appeal and attempted to exhausted his administrative remedies, but did not receive a response from the Central Office. (Doc. 1, p. 3). Baldwin attached copies of an informal resolution form, an Administrative Remedy request, the Warden's response to his appeal, his appeal to the Regional Office, and the rejection notice from the Regional Office. (Doc. 1, pp. 6-15). However, he did not attach any copies of an appeal to the Central Office.

It appears that Baldwin may have failed to exhaust his administrative remedies. However, the documents attached to the petition cast some doubt on whether Baldwin previously exhausted this issue with a different remedy or whether prison staff interfered with Baldwin's attempt to exhaust. As stated, Baldwin filed an informal resolution form on

July 5, 2011 complaining that the BOP was unlawfully collecting funds from his account. (Doc. 1, p. 10). On this form, in the section titled "CORRECTIONAL COUNSELOR'S COMMENTS" it was noted that, "Inmate Baldwin has already addressed this issue previously through the Administrative Remedy Process, he should have already exhausted this process on this same exact issue." (*Id.*). On the Administrative Remedy request form and the rejection notice from the Regional Office, there are handwritten notes stating: (1) "I have not gotten a response back also I am being denied the request for a BP-11 to exhaust my process which staff here at U.S.P. Allenwood keep stalling me and my request", (this note is signed by Baldwin but not dated); and (2) "Staff Unit Counselor denied giving verification and wont [sic] allow me to refile", (this note is signed by Baldwin and dated 11/20/11). (Doc. 1, pp. 6-7). Because of these inconsistencies, the habeas petition will not be dismissed due to the purported failure to exhaust administrative remedies.

B. **Merits**

The Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3664(f)(2), requires the district court to "order restitution totaling the full amount of the victim's loss, regardless of the defendant's financial situation." *United States v. Johnson*, 66 Fed. Appx. 320, 322 (3d Cir. 2003) (citing *United States v. Coates*, 178 F.3d 681, 683 (3d Cir. 1999); 18 U.S.C. §§ 3556, 3663A, 3664). After full restitution is ordered, the district court shall fix a payment schedule considering financial resources and obligations of the defendant.

*Coates*, 178 F.3d at 683. If the sentencing court knows that a defendant cannot make immediate payment in full, the court is required under § 3664(f)(2) to set a different schedule of payments. *United States v. Corley*, 500 F.3d 210, 226-27 (3d Cir. 2007), *vacated on other grounds and remanded by*, 556 U.S. 303 (2009). The sentencing court cannot delegate the scheduling of restitution payments to a probation officer or to the BOP as the fixing of restitution payments is an exclusively judicial act. *Coates*, 178 F.3d at 685.

In the present matter, the judgment specifically outlined a repayment schedule. Baldwin was ordered to pay a $300 special assessment and $274,000 in restitution, making a minimum payment of $25.00 per quarter towards restitution. (Doc. 10-1, Ex. 1, Attach. B). Baldwin nevertheless argues that the BOP is unlawfully setting payment schedules and collecting funds for payment on his fines, resulting in an unlawful delegation of duty to the BOP. (Doc. 1).

To the extent that Baldwin is challenging the BOP's collection of restitution, this claim has no merit. In *Duronio*, the defendant was convicted of fraud and sentenced to ninety-seven (97) months imprisonment, followed by three (3) years of supervised release. *Duronio v. Werlinger*, 454 Fed. Appx. 71, *1 (3d Cir. 2011), *cert. denied*, 133 S.Ct. 1237 (2013). He was ordered to pay a $200.00 special assessment, "which shall be due immediately," and restitution in the amount of $3,162,376.00. The restitution order provided:

> The restitution is due immediately. It is recommended that the defendant participate in the Bureau of Prisons Inmate Financial Responsibility Program [(IFRP, 28 C.F.R. §§ 545.10-.11)]. In the event the entire restitution is not paid prior to the commencement of supervision, the defendant shall satisfy the amount due in monthly installments of no less than $200.00, to commence 30 days after release from confinement. The Court waived the interest requirement on the restitution payment.

*Duronio*, 454 Fed. Appx. 71, at *1. "The order made no mention of Duronio's payment schedule during the period of incarceration." *Id.* at *1. The defendant filed a section 2241 habeas corpus petition, which was denied by the district court and affirmed on appeal. The Third Circuit Court of Appeals concluded that by "voluntarily entering into the IFRP, Duronio personally provided the BOP the authority to collect restitution funds." *Id.* at *2.

Similarly, Baldwin was sentenced to a term of imprisonment, followed by a period of supervised release, was directed to pay restitution, "due immediately", was advised that during incarceration restitution would be payable through the IFRP and, further, he would provide a minimum payment of $25.00 per quarter towards restitution, and finally, was ordered to pay any outstanding balance of restitution as a condition of supervised release in a monthly installment amount set by the Court of not less than $100.00. *Compare Duronio*, 454 Fed. Appx. 71 at *1, *with* (Doc. 10-1, Ex. B). As explained above, Baldwin voluntarily agreed to every financial plan he entered into and each plan complied with the sentencing court's payment schedule. *See* (Doc. 10-1, Attachs. D, E, F, I). *See also Jordan v. Holt*, 488 Fed. Appx. 587, 588 (3d Cir. 2012) ("The BOP only implements the IFRP after a

prisoner has chosen to participate in it.") (citation omitted). Accordingly, Baldwin's claim that the BOP's schedule of payments and collection of restitution payments is an unlawful delegation of duty to the BOP has no merit. *See Jordan*, 488 Fed. Appx. at 588 (petitioner "cannot be heard to complain about the 'unlawful action of scheduling [his] restitution payments' after he elected participation in the IFRP.") (citation omitted).

To the extent Baldwin is challenging the BOP's collection of the special assessment, this special felony assessment is mandatory under 18 U.S.C. § 3013(a)(2)(A), and "shall be collected in the manner that fines are collected in criminal cases." 18 U.S.C. § 3013(b). The Attorney General is responsible for the collection of criminal fines imposed under § 3013. *See* 18 U.S.C. § 3612(c). The collection of a special assessment is governed by 18 U.S.C. § 3572(d)(1), which provides that "[a] person sentenced to pay a fine or other monetary penalty, including restitution, shall make such payment immediately, unless ... the court provides for payment on a date certain or in installments." The Third Circuit Court has "not held that a sentencing court is required to set a schedule for the payment of a special assessment, nor have [] [they] held that § 3572(d) precludes a sentencing court from delegating the scheduling of such payments to the BOP through its IFRP program." *Douglas v. Martinez*, 416 Fed. Appx. 168, *2 (3d Cir. 2010). *See also Costigan v. Yost*, 318 Fed. Appx. 58 (3d Cir. 2008). Additionally, 28 C.F.R. § 545.10 "explicitly permits the BOP to 'assist the inmate in developing a financial plan for meeting' his or her 'legitimate financial

12

obligations.'" *Herrera v. Zickenfoose*, 2013 WL 5923139, *4 (M.D. Pa. 2013) (Mannion, J.) (citing *Costigan*, 318 Fed. Appx. at 60).

In the present matter, the sentencing court ordered that the special assessment was due immediately. The sentencing court was not required to set a payment schedule for the special assessment. *See Herrera*, 2013 WL 5923139 at *3 ("unlike with restitution, there is no provision mandating that the order for a fine or special assessment include a payment schedule in consideration of the defendant's economic circumstances") (citing *Costigan*, 318 Fed. Appx. at 60). Baldwin voluntarily entered into his financial plans and agreed to make quarterly payments in the amount of $25.00 until his obligations were satisfied. (Doc. 10-1, Attachs. D, E, F, I). The BOP was authorized to help him develop a financial plan and monitor his progress in meeting his financial obligations. *See* 28 C.F.R. § 545.11. Therefore, Baldwin's claim on this ground lacks merit.

### III. CONCLUSION

Baldwin's habeas petition filed pursuant to 28 U.S.C. § 2241 will be denied on the merits. His claim that the BOP's scheduling of payments and collection of funds for payment of his court-ordered fines resulted in an unlawful delegation of duty to the BOP is without merit. Baldwin voluntarily entered into the IFRP and the sentencing court delineated a payment schedule for restitution and for any unpaid restitution balance upon his release from incarceration. Additionally, the sentencing court properly ordered that the special

assessment was due immediately and the scheduling of such payments may be delegated to the BOP.

A separate Order will be issued.

Date: June 20, 2014

Robert D. Mariani
United States District Judge